UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Tammy C., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 17 CV 50346 |
| | ) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

In June 2013, plaintiff was injured in a car accident, breaking several bones in her right hip. Four months later, she stopped working, and then, in February 2014, filed for disability benefits. She was then 44 years old. At the administrative hearing, she testified that she could not work chiefly because of ongoing pelvic-related pain, which made it difficult to sit for lengthy periods, and because of psychological problems, including depression and PTSD.[2] A medical expert, Dr. Sai Nimmagada, testified that plaintiff had the residual functional capacity ("RFC") to do sedentary work, subject to certain restrictions. In November 2016, the ALJ issued a written decision largely adopting the expert's RFC. The ALJ agreed that plaintiff had several severe impairments (status post pelvic fractures, degenerative arthritis, and chronic pain syndrome) that could cause pain, but found that her testimony about the extent of that pain was not credible.

The credibility analysis was the heart of the decision. The discussion, which was loosely structured, began with the statement that the objective evidence failed to provide "strong support" for plaintiff's testimony. This conclusion was followed by a chronological summary of

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.
[2] She also alleged that she suffers from urinary incontinence.

1

the medical visits, with occasional commentary by the ALJ mixed in. The ALJ then provided the following summation:

> As summarized above, the medical evidence of record is not supportive of the claimant's allegations of disabling symptomatology. While the claimant was involved in a motor vehicle accident that resulted in fractures of the pelvis, she underwent conservative treatment through March 2015, which she reported helped her pain. She even described her pain as intermittent in nature. She did finally undergo radiofrequency ablation in March 2015, which she reported markedly improved her pain, and by August 2015, the claimant was turning down prescribed pain medications and reported doing better. Following this visit, the claimant's treatment notes seem to focus primarily on issues with bronchitis and pneumonia, with unremarkable physical examinations. There is no indication of any emergency room hospitalizations due to exacerbation of pain despite her reports of rating it on a seven or eight on a scale of one to ten, and she has not needed an assistive device for ambulation. She is able to live alone and has reported no issues with personal hygiene, and no recommendations have been made for her to engage in any further treatment intervention.

R. 24. In this appeal, plaintiff raises many arguments for remand, some of which are narrowly-focused, such as a handful of criticisms of the vocational expert's methodology. But two broader, often-raised arguments are predominant—namely, doctor-playing and cherrypicking. The Court finds that these arguments justify a remand.

An obvious preliminary question to ask is whether the ALJ's decision to call a medical expert, something that is not done in every case, basically immunized the ALJ against the doctor-playing criticism. In this case, it does not. First, the expert unfortunately provided very little analysis. Instead, after only a few introductory questions (covering one page in the transcript), the expert simply announced his proposed RFC. The ALJ did not ask him to explain how he reached this conclusion. It is true that plaintiff's counsel subsequently asked questions, but they focused on discrete issues. The upshot is that the expert did not comment on the bulk of the medical evidence. There is no commentary on, for example, plaintiff's MRIs, the types of treatment she underwent, and whether other treatments were available.

Second, in those areas where the expert did comment on specific topics, his testimony was arguably ambiguous, at least in two instances. Plaintiff argues that the expert gave conflicting answers about whether plaintiff's depression and whether her subjective pain levels were accounted for the RFC. The Government argues that the testimony, when considered carefully, was not ambiguous. The Court need not resolve these competing arguments here because it is enough to note that plaintiff has raised a colorable argument that the expert's testimony was "too convoluted to be reliable" with regard to the above issues. Dkt. #18 at 2.

Third, in the ALJ's analysis, she never referred back to any of the expert's hearing testimony, nor to any specific finding made by the Agency physicians. This is not surprising given that, as stated above, the expert did not provide any such analysis. Thus, it is reasonable to conclude that the ALJ was charting her own course through the medical history—in other words, she was playing doctor. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."). Medical expert testimony does not immunize an ALJ from doctor-playing criticism if the ALJ does not rely upon the ME's testimony. In sum, although the medical expert and the ALJ reached the same destination, the Court cannot confirm that they took the same pathway to get there. *Cf. Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (the Court must be able to trace the path of the ALJ's reasoning).

Turning to the individual credibility rationales, the Court begins with ALJ's first claim that the objective evidence "fail[ed] to provide strong support" for plaintiff's allegations. Plaintiff first argues that the ALJ used a too-demanding standard. This issue resurfaces often in disability litigation. The question is whether the ALJ required the plaintiff to essentially prove, through diagnostic tests and the like, that her subjective pain allegations were objectively true.

3

*See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("an administrative law judge may not deny benefits on the sole ground that there is no diagnostic evidence of pain"). Given the decision to remand on other grounds, the Court need not resolve this issue, but the ALJ should be cognizant of this potential source of confusion.

Plaintiff next argues that the ALJ played doctor in reaching the particular medical conclusions contained in the credibility paragraph quoted above. To summarize, the ALJ concluded that plaintiff's treatment was conservative; that this treatment led to improvement; that her problems were intermittent; that she never visited the emergency room; that she did not need an assistive device to walk; and that her doctors did not recommend further treatment. However, several of these issues require medical expertise to fully assess. For example, the ALJ assumed that plaintiff's treatments (multiple pain medications, physical therapy, steroid injections, radiofrequency ablations, and a bladder stimulator) were conservative, but little explanation and, importantly, no medical opinion testimony was given to justify this conclusion. The medical expert at the hearing did not address this issue.[3] As for the criticism about plaintiff not pursing further treatments, the ALJ did not establish the necessary predicate that viable options were available. It is not always the case that effective and safe treatments exist. As for the claim that plaintiff did not go to the emergency room, this is also a weak rationale, especially without any grounding by a medical expert. *See Schomas v. Colvin*, 732 F.3ed 702, 709 (7th Cir. 2013) ("a person suffering continuous pain might seek unscheduled treatment if that pain unpredictably spikes to a level which is intolerable, but otherwise why would an emergency-room visit be sensible? Unless emergency treatment can be expected to result in *relief*, unscheduled treatment in fact makes no sense") (emphasis in original). As for the lack of an

---

[3] He did state that he was "not totally familiar with the stimulator" for the incontinence problem. R. 63.

assistive device, it is not clear whether the need for a cane is relevant to the central claim here—whether plaintiff could sit for lengthy periods.[4]

In addition to doctor playing, the ALJ's credibility rationales rested to some degree on cherrypicking. *See Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (an ALJ may not ignore a line of evidence contrary to his conclusion). The ALJ suggested that plaintiff's problems improved, the implication being that the improvement was permanent and stable. But this conclusion rests on only a few statements. One was that plaintiff stated that she had marked improvement after radiofrequency ablation in March 2015. R. 688. However, plaintiff later testified that this improvement lasted for only two months. R. 44. The ALJ did not acknowledge this contrary testimony. *See Mischler v. Berryhill*, __ Fed. Appx. __, 2019 WL 1299948, *4 (7th Cir. March 20, 2019) (criticizing the ALJ for relying on "two instances in the record where [the claimant] reported doing well" but then saying "nothing about the treatment between or after these dates"). In addition, and perhaps more significant, the ALJ did not acknowledge several statements made by Dr. Stephen Minore in a July 7, 2015 opinion letter.[5] He opined that, despite the plaintiff's improvement from the March 2015 procedure, plaintiff would "require repeat bilateral lumbar facet rhizotomies every year" and that they would "cost approximately $15,000.00 to $18,000.00." R. 689. These statements directly contradict the ALJ's rationale that "no recommendations have been made for [plaintiff] to engage in any further treatment intervention." *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (an ALJ may not base a credibility determination on "errors of fact or logic").

---

[4] In raising all the above questions about doctor-playing, the Court is not indicating that the ALJ was necessarily wrong, or that the ALJ's rationales would not be sufficient if supported by appropriate medical testimony.
[5] Neither side has explained Dr. Minore's role in this case. His opinion letter was sent to an attorney, and statements in his letter make it sound as if this letter were being offered to support a claim by plaintiff arising out of the car accident. If so, then this fact could be relevant on remand in assessing his possible bias.

The ALJ's claim that plaintiff's pain was intermittent is subject to similar criticisms. The ALJ referred to one statement by plaintiff to her doctor that her "pain has been intermittent since onset." R. 373. But as plaintiff notes, the ALJ omitted other statements, helpful to plaintiff, contained in the same paragraph—specifically, that her pain was then "at a severity of 7/10" and that her treatment had only provided "mild relief." *Id.* More broadly, it is not clear how plaintiff's statement that her pain was intermittent casts doubt on her credibility. There is no evidence that she elsewhere claimed that her pain was constant and unvarying. An allegation of intermittent pain, by itself, is not a basis for denying a claim. *See Fischer v. Berryhill*, __ Fed. Appx. __, 2019 WL 644219, *6 (7th Cir. Feb. 15, 2019) (remanding: "Fisher's doctors opined that she was likely to experience good days and bad days, but the ALJ focused exclusively on Fisher's good days.").

In discussing plaintiff's treatments, the ALJ also downplayed the fact that plaintiff was taking pain medications. At the hearing, plaintiff testified that she was then taking several pain medications. R. 42 ("I take ibuprofen. I take Vicodin. I take meloxicam."). Yet in the decision, the ALJ gave little attention to this fact and at one point even suggested that plaintiff was not taking any pain medications. Specifically, the ALJ noted in the narrative portion of the decision that a doctor wrote that plaintiff "elected not to try Gabapentin for her pain." R. 24. Although this fact is true (but incomplete), the ALJ later in the credibility paragraph parlayed it into the broader statement that plaintiff was "turning down prescribed pain medications." *Id.* This statement suggests that plaintiff was refusing *all* pain medications. But as noted above, this is contrary to her testimony that she was taking three pain medications. Moreover, as for the specific issue of Gabapentin, plaintiff indicated that she had "read [that it had] too many side

6

effects."[6] R. 911. The ALJ omitted this fact from the decision, thereby leaving an incomplete picture.

One final consideration regarding the lack of treatment is that plaintiff testified she could not pay for treatment, particularly the radio frequency ablations that Dr. Minore recommended. R. 44, 50. The ALJ did not follow up on this issue at the hearing, or discuss it in the written decision. This was an error. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (ALJs cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin").

In addition to the these problems, the Court notes that the ALJ also ignored several observations that may have added some measure of corroboration to plaintiff's testimony that she could not sit for lengthy periods. One was from the psychological consultative examiner, Dr. Harris, who wrote the following:

> [Plaintiff] ambulated slowly and with an observable limp. She appeared to have observable difficulty sitting down or rising from a seated position, and she appeared to be in physical pain. She frequently squirmed and stood and sat throughout the evaluation.[7]

R. 347. Another is the fact that plaintiff testified at the hearing that she was then having trouble sitting during the hearing because of pain. R. 42. The Court mentions these observations not because they are dispositive on their own, but because they are the type of observations this Court has repeatedly seen ALJs rely on when they *undermine* a claimant's allegations. Fairness dictates that should also be acknowledged when they *support* the claimant's allegations.

In sum, the Court finds that the identified problems are sufficient to justify a remand. The Court acknowledges that plaintiff raised other arguments not addressed herein. These include

---

[6] She also stated that she was then "feeling better," a statement that provides some support for the ALJ's theories. R. 911.
[7] The report states that the interviewed lasted approximately 40 minutes. R. 350.

arguments about her mental impairments, her alleged concentration problems, and multiple arguments attacking the vocational expert's methodology. Some of these are less compelling than others. In particular, the Court is not persuaded by the plaintiff's claim that the ALJ committed an error in stating that plaintiff had "not been engaged in any mental health treatment." R. 20. Plaintiff argues that this was inaccurate because she was taking psychological medications, such as Prozac, prescribed by her general physician. However, the Court agrees with the Government that a "fairer reading" is that the ALJ was merely indicating that plaintiff did not seek treatment "from a psychologist or psychiatrist." Dkt. #17 at 3. On the other hand, the Court agrees with plaintiff that the ALJ should not have rejected a statement from plaintiff's friend (Tami Lynde) on the ground that she was not "medically trained to make exacting observations" and was not a "disinterested third party." R. 25; *see* SSR 16-3p (instructing ALJs to consider not only information from doctors but also from "other persons," including "family and friends").

Aside from these observations, the Court will leave the remaining arguments to be considered by the ALJ. On remand, both the ALJ and plaintiff should address all these issues to ensure that they are fully explored, and plaintiff's counsel should specifically bring them to the ALJ's attention, both in a pre-hearing brief and during the hearing itself. In remanding this case, the Court is not dictating a particular result, as the evidence is not uniform and plaintiff will have to overcome several hurdles to prevail.

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings.

Date: April 9, 2019     By: _____
                        Iain D. Johnston
                        United States Magistrate Judge